GALIA A. PHILLIPS - #250551
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (415) 269-4553

Attorney for Defendant
STEPHEN DURLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>STEPHEN DURLAND,<br><br>             Defendant. | Case No. 3:11-CR 009-JSW<br><br>**SENTENCING MEMORANDUM OF STEPHEN DURLAND**<br><br>Date:     October 13, 2011<br>Time:    2:00 p.m.<br>Judge:   Judge Jeffrey S. White |

## I. INTRODUCTION

The day after meeting his court-appointed lawyer, Steve Durland walked into a proffer session with Assistant United States Attorney Jonathan Schmidt and FBI Agent Jeff Chisholm and explained to them that he had forged stock issuance documents at the request of his former boss, Pegasus Wireless CEO Jasper Knabb. Mr. Durland – who had decided to do everything he could to make up for the crime he had committed – answered every question asked of him. He also provided hundreds of pages of documents voluntarily as no subpoena was ever issued to him. But for Mr. Durland's cooperation, Mr. Knabb would not have plead guilty.

While Mr. Durland certainly committed serious crimes for which he knows he will be punished (and imprisoned), he has made every effort to repair the damage he did by cooperating as fully and quickly as possible, by doing everything asked of him by the United States Attorney's Office and the FBI, and by meaningfully accepting responsibility for his actions. For these reasons, he asks that this Court sentence him to 12 months and one day in prison. Twelve months is a long time for a man with two young children and no criminal record. It is also only part of the punishment he faces: he will be a felon with all the stigma, loss of civil rights and professional opportunities that entails; he will be subject to supervised release, and he is financially devastated with an extremely hard road to recovery considering that he faces substantial monetary penalties in the related SEC case, he is a defendant in multiple civil suits relating to Pegasus Wireless, he is barred from ever serving as an officer or director of a public company, he lost his CPA license, and he is prohibited from most jobs in his field by virtue of his felony conviction.

## II. THE CONSPIRACY AND STEPHEN DURLAND'S ROLE

From about May 2005 to February 2008, Jasper Knabb, Pegasus Wireless's CEO, and Stephen Durland, Pegasus Wireless's CFO, had unrestricted Pegasus stock issued under false pretenses to family, friends, associates, and companies. Knabb and Durland then sold the stock or had the recipients of this stock sell the stock on their behalf and give most of the proceeds to

them. Knabb and Durland also filed documents with the SEC that contained false statements and omissions regarding the amount of stock issued and the true reason for its issuance.

For example, on June 6, 2005, Knabb and Durland had 11 million shares of Pegasus common stock issued primarily to family, friends, and associates. Durland provided the stock transfer company, Olde Monmouth, with paperwork that stated that the stock issuance was to satisfy a debt, when in fact there was no debt. At the time, Mr. Durland believed that the debt was legitimate and that some of the issuance was to satisfy this debt, but he knew that far more shares were being issued than was necessary. Later, in the summer of 2006, Knabb told Durland he needed stock to satisfy margin calls. Since there was no stock available to give Knabb, Durland had stock fraudulently issued by claiming that forged promissory notes allowed for the issuance of unrestricted stock to Knabb and Durland's family, friends, and associates. After the margin calls were satisfied, Knabb continued to request (and Durland continued to create) fraudulent stock. Between August 2006 and February 2008, Knabb instructed Durland to have 479,150,000 shares of unrestricted Pegasus stock issued. Jasper Knabb made approximately $29 million. Stephen Durland made about $2.1 million from the improperly issued stock.

### III. STEPHEN DURLAND'S COOPERATION WITH THE GOVERNMENT AND ACCEPTANCE OF RESPONSIBILITY

In early September 2010, the FBI and the U.S. Attorney's Office contacted Stephen Durland and asked him if he would cooperate in a criminal investigation into the Pegasus stock transfers. AUSA Jonathan Schmidt explained that he needed Mr. Durland to cooperate immediately and so Mr. Durland participated in his first proffer session three weeks later. Mr. Durland did everything that was asked of him by the government and more: he provided hundreds of documents without any formal request, and he shared the full extent of his knowledge about Pegasus Wireless. Durland answered all of the government's questions completely and honestly, and he fully admitted his own wrongdoing. *See* PSR ¶41. Mr. Durland's cooperation was not just immediate, full and truthful, it was also very significant: as the government has acknowledged, without Mr. Durland's cooperation, Jasper Knabb would not

have pled guilty.

### III. THE LIFE OF STEPHEN DURLAND

# REDACTED

## IV.   AN APPROPRIATE SENTENCE

The Court has wide discretion in setting Durland's sentence under both § 3553(a) and U.S.S.G. § 5K1.1.[1]  The overarching principle is that the Court "shall impose a sentence

---

[1] Section 5K1.1 "itself provides that . . . once the Government has filed a motion requesting a departure under [this section], the court is *in no way constrained* by the Guidelines in selecting a particular sentence which it deems appropriate." *United States v. Krejcarek*, 453 F.3d 1290, 1300 (10th Cir. 2006) (emphasis added); *accord Moorer v. United States*, 534 F. Supp. 2d 469, 473 (D. Del. 2008); *see also United States v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992). Moreover, the Court is not bound by the extent of the departure recommended by the government; the Court has authority and discretion to issue a sentence below the government's proposed departure. *Udo*, 963 F.2d at 1319; *accord Krejcarek*, 453 F.3d at 1300

1  sufficient, but not greater than necessary" to meet the goals of sentencing.  18 U.S.C. § 3553(a);
2  *Carty*, 520 F.3d at 991.  Among the factors for the Court to consider are the nature and
3  circumstances of the offense and the history and characteristics of Mr. Durland.

### A. The Nature and Circumstances of the Offense:  Mr. Durland's minor role merits leniency.

The parties and probation agree that Mr. Durland should receive a 2-level reduction for minor role.  The minor role reduction reflects the fact that Mr. Durland acted at the direction of his boss, CEO Knabb.  PSR ¶49.  The minor role reduction also reflects the disparity in gain between Mr. Durland and Knabb.  While Jasper Knabb made over $29,000,000, Mr. Durland made a little less than $2.1 million.  Since the government was unable to determine whether Durland's and Knabb's actions caused loss to Pegasus Wireless or its shareholders, the parties based the loss calculation on the gain to Durland and Knabb.  *See* Federal Sentencing Guidelines, §2B1.1, Application Note 3(B).

Because Mr. Durland accepted responsibility for the money that Jasper Knabb earned, Mr. Durland received a 22-level enhancement in his guideline range (for loss between 20 to 50 million) instead of the 16-level enhancement (for loss between 1 and 2.5 million).  Jasper Knabb, on the other hand, will receive no increase in his guideline range based on the amount Mr. Durland earned because Mr. Durland's earnings, while clearly significant, are still too small to increase Mr. Knabb's guideline range.  While Mr. Durland accepts that his actions helped Mr. Knabb make his $29,000,000 and that his guideline range must be calculated accordingly, clearly the Court may take this into account when deciding the appropriate sentence for Mr. Durland. *See United States v. Oakford Corp.,* 79 F. Supp. 2d 357, 368 (S.D.N.Y. 2000) (departure granted in fraud case where defendant personally realized only small portion of the overall gain of $15 million); *United States v. Thomas,* 595 F. Supp. 2d 949 (E.D. Wis. 2009) (defendant's minor role in attempted cocaine distribution, combined with problems posed by quantity driven Guidelines, and defendant's other personal qualities and rehabilitative efforts justified 5 months of confinement, rather than guideline term of 27-33 months).

B. **The History and Characteristics of Mr. Durland: Mr. Durland's extraordinary cooperation, low risk of recidivism and sincere remorse merit leniency.**

Mr. Durland's complete, timely, and extensive cooperation is a mitigating factor this Court should consider. As explained above, Mr. Durland agreed to cooperate with the government immediately – the day after meeting his court-appointed lawyer and before he was ever charged. He voluntarily produced hundreds of documents even though a subpoena was never issued. He forthrightly admitted he had forged documents at his first meeting with the prosecution and the FBI. He agreed to accept responsibility for the $29,000,000 earned by his boss, CEO Knabb, even though he himself earned far less. This extraordinary cooperation merits serious consideration by this Court. *See United States v. Ledezma,* 2007 WL 4143225 (E.D. Wis. Nov. 19, 2007) (after granting 6 level departure based on substantial assistance, court further varied downward to one day imprisonment with condition of 6 months home confinement based on no criminal history, minimal role in the crime, and just punishment).

The Court should also consider that Mr. Durland, who at 57 years old has no criminal history, has a very low risk of recidivism. *See United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004). In addition, the Court should consider that Mr. Durland clearly has expressed remorse and an awareness of the serious consequences of his actions. *See United States v. Pauley,* 511 F.3d 468 (4th Cir. 2007) (36-month downward variance warranted in child pornography case where defendant was less culpable, deeply remorseful, and affected by collateral consequences). As Mr. Durland explained to the probation officer:

> I feel terrible. I caused so much pain to my family, especially my children []. I am profoundly ashamed of my actions and my failure to abide by [my] responsibilities when I worked at Pegasus. I have been a CPA for 23 years and I know I have thrown away years of work and goodwill by my actions. I

cooperated with the government because I know what I did was wrong and [am] hoping that by admitting everything I did and by helping the prosecution, I can begin to make up for the damage I have done and the hurt I have caused so many people."). PSR ¶41

Finally, the Court should consider that Mr. Durland has already been significantly punished by collateral consequences. He is financially ruined; he has lost his CPA license and his job, and is prohibited from most jobs in his field. *See United States v. Wachowiak,* 496 F.3d 744 (7th Cir. 2007) (downward departure upheld because defendant's future career as a teacher was ruined and he lost his job as a result of the conviction).

### C.     The Kinds of Sentences Available

Lastly, Mr. Durland respectfully requests that the Court take into account the following considerations in fashioning his sentence.

*First,* In order for Mr. Durland to continue seeing his family while he is imprisoned, Mr. Durland requests that he be incarcerated at a detention facility as close to Greensboro, NC as possible. FCC Butner is less than one hour away from Greensboro and would allow his children to continue to see their father and maintain a relationship with Mr. Durland while he is incarcerated. Additionally, in light of his age, his lack of criminal history, and the non-violent nature of his offense, Mr. Durland requests that the Court recommend that he be incarcerated in the minimum security federal prison camp at FCC Butner.

*Second,* Mr. Durland respectfully requests that he be allowed to voluntary surrender after sentencing. Mr. Durland is clearly not a flight risk. He has appeared at all his court dates and he voluntarily met with the FBI and the prosecution before being charged. He has been released on his own recognizance throughout the pendency of the case and has had no problems whatsoever. Permitting Mr. Durland to voluntarily surrender will allow the Bureau of Prisons enough time to classify Mr. Durland, hopefully place him in a facility close to his children, and allow Mr. Durland to maintain contact with his children throughout this process. If Mr. Durland is taken into custody at sentencing, he will spend months in a location far from his family waiting to be classified, and his children will unnecessarily be deprived of contact with their father for months.

### V. CONCLUSION

For the foregoing reasons, Stephen Durland respectfully requests a sentence of 12 months and one day; a recommendation that he be incarcerated at the federal prison camp at FCC Butner, and a report date in early January.

Dated: October 6, 2011

By: */s/ Galia Amram Phillips*
GALIA A. PHILLIPS
Attorney for Defendant